IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2011 OCT -3  PM 4: 01

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

BRANDT WISWELL,

               Plaintiff,

-vs-                                                    Case No.  A-11-CA-737-SS

VERTICALSCOPE, INC. and "KMAC,"
               Defendants.

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, including Defendant Verticalscope, Inc.'s Motion for Judgment on the Pleadings [#11], Plaintiff Brandt Wiswell's Response thereto [#15], and Verticalscope's Reply [#18]; and Wiswell's Motion to Request Oral Hearing on the Motion for Judgment on the Pleadings [#16], and Verticalscope's Response [#19].  The Court denies Verticalscope's motion, and dismisses Wiswell's request for oral hearing as moot.

### Background

This diversity action arises from allegedly defamatory statements about Wiswell, made by users of an internet forum run by Verticalscope, particulary one "Kmac," a moderator of the forum. Wiswell had posted an advertisement to sell merchandise on the forum, and, in response, Kmac initiated a string of communications implicitly accusing Wiswell of defrauding customers (the 2010 thread), and linking to a previous discussion thread containing apparently defamatory allegations about Wiswell (the 2004 thread).  On both threads, other users chimed in and also made various defamatory statements about Wiswell.  Subsequently, Kmac apparently used his forum rights as a

moderator to "ban" Wiswell from the forum, and thanked other users for their help in policing the forum. Wiswell asserts a slew of claims against Verticalscope and Kmac, including defamation, statutory libel, business disparagement, tortious interference with prospective and existing relations, public disclosure of private facts, intentional infliction of emotional distress, and common law negligence.

Verticalscope moves for judgment on the pleadings pursuant to Rule 12(c). *See* FED. R. CIV. P. 12(c). The same legal standard applied to Rule 12(b)(6) motions to dismiss governs 12(c) motions. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "'[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (internal quotations omitted). Although the Court must accept the factual allegations in the pleadings as true, the plaintiff must nonetheless plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Verticalscope posits two bases for why it is entitled to judgment on the pleadings. First, Wiswell's claims are alleged to be time-barred by the one year statute of limitations governing defamation. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring suit for . . . libel, slander . . . not later than one year after the cause of action accrues."). Second, Verticalscope asserts immunity under the Communications Decency Act. *See* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."). Specifically, Verticalscope argues any defamation was committed by the anonymous "Kmac," not by Verticalscope itself, and Kmac was "another information content provider" under the Act.

Wiswell counters the statute of limitations argument by noting (1) some of the allegedly defamatory statements were made in 2010, within one-year of the date this suit was filed, and (2) the remaining defamatory statements, admittedly made in a forum thread in 2004, were republished in the 2010 thread. Wiswell also asserts § 230(c)(1) does not apply because Kmac was a forum moderator for Verticalscope's website, and made the defamatory statements and republication within the scope of his moderator duties, thereby rendering Verticalscope vicariously liable under agency principles.

**Discussion**

## I. Statue of Limitations

### A. The 2010 Thread

Viewing all factual pleadings as true, the Court finds Wiswell has passed the minimum threshold of stating a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570. First, a reasonable juror could find several of Kmac's statements in the 2010 thread constituted defamation—they clearly communicate to forum readers Kmac's belief that Wiswell had a history of defrauding customers. *See* Notice of Removal [#1], Ex. B (Pl. 1st. Amend. Pet.) ¶¶ 19, 22, 23, 24. This conclusion is borne out by the posted reactions of other forum users, also apparently defaming Wiswell, thanking Kmac for reposting the 2004 thread, and asserting they backed out of purchases from Wiswell based on Kmac's post, and the content of the 2004 thread. *See id.* ¶¶ 26, 27, 28, 29, 31, 32. To be clear, the Court does not hold such statements by these other users, who were not moderators, can be imputed to Verticalscope. These third-party statements appear to fall within the scope of immunity contemplated by § 230(c)(1). But their reactions show Kmac's 2010

post can be plausibly seen as defamatory, as well as providing evidence of potential damages in the form of lost sales.

## B. The 2004 Thread

Second, although a very close question, the Court cannot say as a matter of law Wiswell has failed to state a claim as to the 2004 thread. In an *Erie* guess as to Texas law, the 5th Circuit has applied the single publication rule to internet publications. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146 (5th Cir. 2007). Applying the single publication rule to the 2004 thread would mean Wiswell's cause of action accrued well over a year ago, thus barring his claim as to that thread. However, the single publication rule carries with it an exception for subsequent republication. *Id.* ("[T]he single publication rule provides that when an allegedly defamatory statement is published in a new format, such as when a hardcover book is republished in paperback form, it is considered 'republished' and the statute of limitations begins to run from the date of republication.").

The facts in this case present an apparently novel question: does a new forum post, on a new forum thread, containing a link to the original thread, operate as a republication of the original thread? The Court is aware of no authority directly on point, and the cases analogized to by the parties are not binding precedent. All the cases the Court is aware of relate to whether modification of a website was sufficient to constitute a republication, *see, e.g.*, *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1054–55 (D. N.D. 2006); *Churchill v. State*, 876 A.2d 311, 319 (N.J. Super. Ct. App. Div. 2005) (holding that minor technical adjustments to the layout of a website did not constitute republication), or whether a link alone constitutes republication, *see, e.g.*, *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 918 (W.D. Ky. 2009). Although the trend is towards a relatively

bright-line rule that hyperlinks do not constitute republication, *see, e.g., id.*, the Court is not persuaded a link could never constitute a republication as a matter of law. Given this is a developing area of law, and this case poses a factual context different from the other internet defamation cases the Court is aware of, the Court declines to simply apply the rule announced in those cases. Rather, the inquiry should turn on the context in which the link is made or posted, rather than a blanket rule holding a link can never constitute republication.

Similarly, although many of the internet defamation cases focus on whether the content of the information has been changed or substantially edited, *see, e.g., id.*, that approach diverges from the core rationale behind the republication exception. In its traditional fact setting, the exception is animated to a considerable extent by whether a new audience is reached. *See Belo Corp.*, 512 F.3d at 146; RESTATEMENT (SECOND) OF TORTS § 577A, cmt. d ("The justification for this conclusion usually offered is that in these cases the second publication is intended to and does reach a new group.").

For example, when a hardback book is republished in paperback form, although the content normally is not substantively changed, the paperback edition is nonetheless a republication. *See Belo Corp.*, 512 F.3d at 146. In such a case, the cheaper paperback is presumably reaching a different market, and thus a different audience, than the original hardback. Indeed, even reprinting the original hardback version can qualify as a republication under certain circumstances. Specifically, the length of time between the original publication and a reprinting can be dispositive—if only a short period of time passes, the reprinting is still part of the original publication, but if a long period of time intervenes, the reprinting can become a republication. *See* RESTATEMENT (SECOND) OF TORTS § 577A, cmt. d ("The printing . . . of extra copies of the first edition of a book may properly

be treated as mere continued circulation of the first edition and hence as still part of the single publication, if it is done not long after the original publication as soon as the supply is exhausted. If it occurs ten years later, it is indistinguishable from a second edition and there is a new cause of action."); *accord* AM. JUR. 2D, *Libel* § 245.

Here, because the link was made in what appears to be an entirely new thread, some six years later, it may plausibly have reached a different audience than the original thread. Also, a much stronger analogy can be drawn between new print publications, and posting a new message thread on a forum, as compared to merely making technical adjustments to a website. Although the Court cannot make a final determination at this point, based on the limited record before it, judgment under Rule 12(c) regarding the 2004 thread is improper at this time for the reasons given above.

## II. Immunity Under the CDA

Finally, Verticalscope cites no authority holding forum moderators can never be agents of forum owners as a matter of law. The principal case relied on by Virtualscope, *Myspace*, 474 F. Supp. 2d 843, is silent on that point. One court has rightly declined to consider moderators to be *general* agents for forum owners, but did note they are "agents for the limited purposes of moderating discussions." *Cornelius v. Bodybuilding.com, LLC*, No. 1:10-cv-027-BLW, 2011 WL 2160358 (D. Idaho June 1, 2011). The Court is skeptical whether Kmac was acting within such a limited scope of authority (assuming he was in fact a forum moderator), and a final determination on this point will require additional facts, such as, the scope of authority Verticalscope gave to its forum moderators. Nevertheless, Wiswell has made out a plausible case that Kmac was not merely a third party—for whose statements Verticalscope would be immune under the CDA—but rather was

an agent of Verticalscope by virtue of his moderator status, making judgment on the pleadings improper at this time.

In conclusion the Court finds Wiswell has at least met his burden of stating a plausible claim for which relief can be granted, and therefore DENIES Virtualscope's motion for judgment on the pleadings. In accordance with the foregoing,

IT IS ORDERED that Verticalscope, Inc.'s Motion for Judgment on the Pleadings [#11] is DENIED;

IT IS FINALLY ORDERED that Brandt Wiswell's Motion to Request Oral Hearing [#16] is DISMISSED as moot.

SIGNED this the _3ʳᵈ_ day of October 2011.

SAM SPARKS
UNITED STATES DISTRICT JUDGE